# In the United States Court of Federal Claims

No. 22-860C

(Filed: July 12, 2024)

|  |  |
|---|---|
| **UTILITY CONSTRUCTION COMPANY, INC.,** | ) ) ) ) |
| *Plaintiff,* | ) ) ) |
| v. | ) ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) ) |

## ORDER ON MOTIONS TO COMPEL AND ORDER TO SHOW CAUSE

### I. Background

On June 12, 2024, Defendant, the United States, filed a motion to compel a variety of "equipment records" from Plaintiff, Utility Construction Company ("Utility"). ECF No. 34 ("Def. MTC"). On June 15, 2024, Utility filed its own motion to compel the production of various classes of documents and interrogatory responses from the government. ECF No. 35 ("Pl. MTC"). Utility argues that the government: provided inadequate responses to its request for production of documents ("RFPD"); failed to provide information regarding destroyed documents; provided deficient responses to Utility's interrogatories; and improperly invoked the deliberative process privilege in refusing to produce some documents. *Id.*

On June 21, 2024, Utility filed its response in opposition to the government's motion, ECF No. 36 ("Pl. Resp.") and on June 24, 2024, the government filed its reply to Utility's response, ECF No. 37 ("Def. Repl."). That same day, the government filed its response to Utility's motion to compel, ECF No. 38 ("Def. Resp."), which Utility countered on July 1, 2024, with a reply brief, ECF No. 39 ("Pl. Repl."). On July 10, 2024, the Court held a nearly two-hour hearing to sort through the various issues.

## II.     Applicable Discovery Rules

Pursuant to Rule 26 of the Rules of the United States Court of Federal Claims ("RCFC"):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

RCFC 26(b)(1).[1]

Generally, discovery rules receive "broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507 (1947); *see also Afro–Lecon, Inc. v. United States,* 820 F.2d 1198, 1203 (Fed. Cir. 1987) ("The scope of civil discovery is broad and requires nearly total mutual disclosure of each party's evidence prior to trial."). The scope of "discovery, as defined by Rule 26(b)(1), is broader than admissibility, the latter of which may be addressed via motions *in limine* or through objections at trial." *Alexander v. Wade*, 2024 WL 233722, at *2 (E.D. Mich. Jan. 22, 2024); *United States ex rel. Longo v. Wheeling Hosp., Inc.*, 2019 WL 13217970, at *1 (N.D. W.Va. Nov. 5, 2019) ("Although the Federal Rules of Civil Procedure do not define what is 'relevant,' Rule 26(b)(1) makes it clear that relevancy in discovery is broader than relevancy for purposes of admissibility at trial."). "For purposes of relevancy during the discovery phase, the guideposts are the claims and defenses raised." *Loizon v. Evans*, 2019 WL 13073426, at *2 (N.D. Ill. June 25, 2019), adopted, 2019 WL 13073423 (N.D. Ill. Oct. 2, 2019).[2]

---

[1] This standard mirrors that of Federal Rule of Civil Procedure ("FRCP") 26, as amended in 2000, and interpretation of that rule informs the court's analysis. *See* RCFC 83(a) ("[T]o the extent permitted by this court's jurisdiction," the RCFC "must be consistent with the Federal Rules of Civil Procedure."); 2002 Rules Committee Note, Rules of the United States Court of Federal Claims (providing that "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure"); 2016 Rules Committee Note ("RCFC 26 has been amended in accordance with the corresponding changes to FRCP 26 that became effective December 1, 2015.").

[2] "Prior to the 2000 amendments, the parties were entitled to discovery of any information that was not privileged so long as it was relevant to the 'subject matter involved in the pending action.'" 6 James Wm. Moore, *Moore's Federal Practice* § 26.41[2][a] (3d ed. 2003) (quoting FRCP 26(b)(1) (1983)). Under the current standard, however, a court should "focus on the specific claim

2

But discovery has "ultimate and necessary boundaries." *Hickman,* 329 U.S. at 507. The Court must limit discovery if it finds that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by RCFC 26(b)(1).

RCFC 26(b)(2)(C). The court must balance these considerations while being "careful not to deprive a party of discovery that is reasonably necessary to afford a fair opportunity to develop and prepare the case." *Heat & Control Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed. Cir. 1986); *Petro–Hunt, L.L.C. v. United States,* 114 Fed. Cl. 143, 144 (2013); *see also Hickman,* 329 U.S. at 507 (asserting that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation").

Like Federal Rule of Civil Procedure 26(f), this Court's Rules require an early meeting of counsel. *See* RCFC 26(f); RCFC App. A, ¶ 3. During that meeting, counsel for the parties must "discuss any issues relating to preserving discoverable information, and to develop a proposed discovery plan that indicates the parties' views and proposals concerning: . . . any issues relating to disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced[.]" RCFC App. A, ¶ 3(d)(3).

RCFC 33 governs interrogatories. That rule provides that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." RCFC 33(b)(3). Any objection "to an interrogatory must be stated with specificity" and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." RCFC 33(b)(4). An interrogatory may cover "any matter that may be inquired into under RCFC 26(b)" and "is not objectionable merely because it asks

---

or defense alleged in the pleadings." *Id.* (citing FRCP 26(b)(1) advisory committee note (2000 amend.)). A particular fact need not "be alleged in a pleading for a party to be entitled to discovery of information concerning that fact," but the fact must be "germane to a specific claim or defense asserted in the pleadings for information concerning [the fact] to be a proper subject of discovery." *Id.*

3

for an opinion or contention that relates to fact or the application of law to fact[.]"  RCFC 33(a)(2).

RCFC 34 covers RFPDs.  Pursuant to this rule, a properly served RFPD requires the responding party to, among other things, "produce . . . any designated documents or electronically stored information--including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations" that are "in the responding party's possession, custody, or control[.]"  RCFC 34(a)(1).  Our appellate court, the United States Court of Appeals for the Federal Circuit, has explained that "[t]he plain terms of the rules of civil procedure show that a party served with a document request has four options: (1) respond to the document request by agreeing to produce documents as requested (Fed. R. Civ. P. 34(b)); (2) respond to the document request by objecting (Fed. R. Civ. P. 34(b)); (3) move for a protective order (Fed. R. Civ. P. 26(c) and 37(d)); or (4) ignore the request." *Badalamenti v. Dunham's, Inc.*, 896 F.2d 1359, 1362 (Fed. Cir. 1990); *see also* RCFC 34(b)(2).

Finally, at least for our purposes here, RCFC 37 provides that "a party may move for an order compelling disclosure or discovery."  RCFC 37(a)(1).  In such cases, the trial court exercises broad discretion. *See Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002) (en banc); *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 797 (Fed. Cir. 1984); *Hitkansut L.L.C. v. United States,* 119 Fed. Cl. 40, 45 (2014).  The party moving to compel discovery bears the burden of proving that the opposing party's answers are incomplete. *Jenkins v. United States,* 90 Fed. Cl. 585, 588 (2009).  "On the other hand, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper." *Id.* (internal quotations omitted).  "Typically, the burden is on the party resisting discovery to explain why discovery should be limited given that the Federal Rules allow for broad discovery." *Hohn v. BSNF Ry. Co.,* 2007 WL 2572440 at *3 (D.Neb. May 10, 2007).  "The party opposing discovery has the burden to show that its objections are valid by providing explanation or factual support." *Id.*

### III.   Discussion

**A. The Government's Motion to Compel is Denied**

The government, in its motion, "requests that the Court order plaintiff . . . to produce equipment records in response to [RFPD] number 35, served in November 2023," which sought "all records about the location, movement, or [maintenance] of any equipment used or placed on standby during performance of the [PAVE PAWS Substation repair ("PP")] task order" at issue in this case. Def. MTC at 1.  But throughout its motion, the government fails to demonstrate that there are *any* specific documents (or a class of documents) that exist, but that Utility has failed to produce.  Indeed, Utility counters that it "has produced all of its documents related to the claimed equipment

4

costs," Pl. Resp. at 1, and the Court has no basis to question Utility's representation because the government has not provided any. Indeed, the government admitted as much during the hearing and thus requested that the Court reserve ruling on the motion until the government could complete a deposition covering document custodian and production topics to assess Utility's assertions. Of course, that just means that the government's motion is, at best, not ripe. At worst, it lacks any foundation and is frivolous.

The government's motion is therefore **DENIED**. If and when the government has some concrete basis to assert that Utility has failed to produce specific responsive documents, the government may move to compel their production.

On the other hand, for the sake of efficiency, Utility "shall serve a supplemental [discovery] response affirmatively stating that it has produced all the requested documents" if it has not already done so. *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 307 (D. Kan. 1996).[3] That supplemental discovery response shall be provided to the government **on or before Friday, July 19, 2024**.

### B. Utility's Motion to Compel is Granted in Part and Denied in Part, and the Government is Ordered to Show Cause Why It Should Not Be Sanctioned

Utility's motion suffers from its own severe defects.

Utility complains about the government's "spoliation," Pl. MTC at 11, but, again, this Court cannot compel the production of documents that do not exist. To the extent Utility wants the government to provide Utility with information regarding alleged or admitted document destruction, Utility has a remedy for that: the discovery process. Inexplicably, however, Utility has served no discovery requests regarding the government's document production — at least none that are referenced in its motion — nor has Utility apparently asked any deposition questions about the subject. There is simply nothing to compel. To the extent Utility asks this Court to compel responses to informally posed questions in an email chain or telephonic meet-and-confer, that request is **DENIED**.

---

[3] *See also Manning v. Gen. Motors*, 247 F.R.D. 646, 652 (D. Kan. 2007) ("[T]he Court cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control. . . . [T]here has been no information submitted by Plaintiff to lead the Court to question the veracity of Plaintiff's statement that no responsive documents exist. The Court thus has no basis upon which to compel Defendant to produce responsive documents. The Court, will, however, require Defendant to serve supplemental written responses to this request unconditionally representing that no responsive documents are in its possession, custody, or control.").

Utility seeks to compel responses to several of its interrogatories, notably Interrogatory Nos. 4-7. Pl. MTC at 15-16. Utility challenges the government's objections to those interrogatories as insufficiently specific. Pl. MTC at 13-16. The pot thus calls the kettle black insofar as Utility's analysis of what makes these objections vague is itself vague — far more so than the objections themselves — and relies on arguments and characterizations that can only be described as conclusory. *Id.* at 15. For example, Utility asserts that it "seek[s] information that is only within the Government's custody or control." *Id.* But in support of that assertion, Utility cites only a broad swath of the government's interrogatory responses contained in an appendix to Utility's motion. *Id.* (citing "APPX 55-67"). This Court is not going to try to figure out what Utility is trying to prove from those appendix pages. The Court has no idea to which part of the 13 cited pages Utility intends to refer, or what treasure contained in that trove proves its point. One can only hope that counsel will internalize the message that, "[a]s the Seventh Circuit has memorably put it, '[j]udges are not like pigs, hunting for truffles buried [in the record].'" *Murthy v. Missouri*, -- U.S. --, 2024 WL 3165801, at *12 n.7 (June 26, 2024) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010) (internal quotation marks omitted)). Nor does a conclusory characterization constitute an argument; Utility's naked assertion that the government's objections are "unsubstantiated" is insufficient.

In any event, the Court's review of the government's objections in context leads the Court to conclude that many of the government's objections are, if anything, quite substantial. The government thus has carried its burden. If Utility had undertaken to parse the government's objections, respond in detail, and show why they do not withstand scrutiny, perhaps the outcome would have been different. But this part of Utility's motion — regarding interrogatories— reads more like the sketch of a critique and, thus, is **DENIED**.

Utility's motion also seeks to compel the government's production of additional documents. Pl. MTC at 5. Specifically, Utility seeks to compel the production of documents responsive to RFPD Nos. 2, 4, 8, 12, and 14. *Id.* But while Utility *does* describe (or quote) its RFPDs and the government's responses, Utility mostly fails to connect the dots by analyzing (or even describing) what is inadequate about the government's responses.

For example, there is Utility's discussion of RFPD Nos. 2 and 8, which Utility groups together as substantially similar. "Request for Production Number 2 seeks the production of "any and all communications or documents regarding any issues, claims, defenses, or matters relating to the Task Order from April 8, 2020," while "Request for Production Number 8 seeks the production of 'any and all communications, from April 8, 2020 to the present, regarding any issues, claims, defenses, or matters relating to this matter and the Contracts at issue from and/or to' a number of listed entities and individuals." Pl. MTC at 5-6. The government responded that it would "produce all non-privileged documents related to the PP task order in the custody of the Contracting

Squadron or the Engineering flight, as those documents are kept in the ordinary course of business." *Id.* Utility is dissatisfied that the government has not produced documents for various individuals, *id.* at 6-7, and that the government "has not even attempted to fully or adequately respond" to RFPDs concerning those individuals whose declarations or other communications *were* included. *Id.* at 8.

But when pressed for *what exactly Utility wants the Court to order the government to do*, Utility offers only generalities. Indeed, in Utility's motion, Utility asks this Court for "an order requiring the Government to fully and adequately respond to these document Requests by searching for and producing all relevant, nonprivileged, responsive documents as soon as is practicable." Pl. MTC at 8. This is akin to asking the Court to order the government to follow the law, and for the Court to supervise discovery, rather than to compel production of particular responsive documents that are known to exist, but that have been withheld. With regard to RFPD Nos. 2 and 8, therefore, Utility's motion is **DENIED**. Like the government, Utility likely needs to take some discovery about the government's production before considering whether to attempt to renew this motion. But just as the Court required Plaintiff to "serve a supplemental [discovery] response affirmatively stating that it has produced all the requested documents," *Pulsecard,* 168 F.R.D. at 307, the Court shall require the same of the government. That supplemental discovery response shall be provided to the government **on or before Friday, July 19, 2024**.

Utility's argument regarding RFPD Nos. 4 and 12 suffers from a similar problem. Pl. MTC at 8-10. "Number 4 seeks the production of '[t]he complete Contract File, to the extent it exists as required by 48 CFR § 4.803, for any Prime Government Contract related to the Contracts[,]'" while "Number 12 seeks '[t]he complete Contract File, to the extent it exists as required by 48 CFR § 4.803, for all contracts the Government issued to URS, or its successor in interest, AECOM, pursuant to Solicitation No. FA468616R0001.'" *Id.* at 8-9. The government once again responded that it would "produce all non-privileged documents related to the PP task order in the custody of the Contracting Squadron or the Engineering flight, as those documents are kept in the ordinary course of business." *Id.* at 9. Utility is dissatisfied that "the Government has not produced the entirety of either of those contract files despite their clear relevance to UCC's claims and/or the Government's defenses" albeit with the additional, but inconsistent, acknowledgment that the government has claimed "that the contract files have been produced." *Id.*

During oral argument, Utility indicated it would be satisfied if the Court, consistent with Utility's "repeated[] request[]", would order the government to "identify by Bates range and document order where the contract files have been produced so that UCC can determine whether the files were 'kept in the normal course of business' and consistent with the requirements of 48 C.F.R. § 4.803." Pl. MTC at 9. The Court agrees that this request is appropriate, and thus **GRANTS** the motion in part, as follows: the government shall indicate *by Bates number(s)* where the contract file (as Utility has defined

it) is located within the government's production.  With respect to RFPDs Nos. 4 and 12, the government shall also "serve a supplemental [discovery] response affirmatively stating that it has produced all the requested documents."  *Pulsecard*, 168 F.R.D. at 307.  The foregoing information and supplemental response shall be provided to Utility **on or before July 25, 2024**.  Utility's motion, with respect to RFPD Nos. 4 and 12, is otherwise **DENIED**.

With regard to RFPD No. 14, Utility sought from the government "all documents regarding any continuing requirement, issued from March 22, 2022[,] to the present, for a) Solicitation No. FA468616R0001 and b) all contracts awarded by the Government to any individual or entity pursuant to Solicitation No. FA468616R0001."  Pl. MTC at 10.  The government responded as follows: "We will produce all non-privileged documents related to the PP task order in the custody of the Contracting Squadron or the Engineering flight, as those documents are kept in the ordinary course of business."  *Id.*  The government does not dispute that it has failed to comply with this RFPD and that, instead, its formal response is an attempt to limit the scope of the responsive documents.  In that regard, Utility correctly notes that the government did not raise any objections to this RFPD.  *Id.; see also* Pl. App'x. at 35.

Nevertheless, in the government's response brief opposing Utility's motion to compel, the government for the first time raises an objection to the RFPD at issue: "the discovery sought is not proportional to the needs of this case."  Def. Resp. at 19.  This objection is untimely.  As courts across the Nation have reiterated, objections to a discovery request raised for first time in response to a motion to compel are late and waived.[4]  That is the rule in this Court as well.  *City of Wilmington v. United States*, 141 Fed. Cl. 558, 564 (2019) (concluding that the government "has not articulated 'good cause'

---

[4] *See, e.g., Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.) ("[F]ailure to object to discovery requests within the time required constitutes a waiver of any objection."); *see also Hall v. Marriott Int'l, Inc.*, 2021 WL 1906464, at *10 (S.D. Cal. May 12, 2021) ("[W]hen a party raises an objection to a [discovery] request for the first time in an opposition to a motion to compel, that objection is waived, unless good cause exists to excuse the objection's untimeliness."); *Hinostroza v. Denny's Inc.*, 2018 WL 3212014, at *5 (D. Nev. June 29, 2018) ("In response, Plaintiff objects to this request on the grounds that it is overbroad and unduly burdensome. Plaintiff, however, did not raise these objections in her initial response to Defendant's [requests for production] and, therefore, the Court finds that she has waived these objections."); *Ortiz v. Pin UPS of Daytona Beach, LLC*, 2020 WL 10456853, at *4 (M.D. Fla. July 31, 2020); *Harvard v. Inch*, 2020 WL 701990, at *3 (N.D. Fla. Feb. 7, 2020) ("[B]y raising objections for the first time in their response, Defendants have waived them."); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) ("[i]f a party fails to file *timely* objections to [discovery] requests, such a failure constitutes a waiver of any objections which a party might have to the requests" (emphasis in original)); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661 (D. Colo. 2000) ("[A] failure to object to requests for production of documents within the time permitted by the federal rules has been held to constitute a waiver of any objection.")

for failing to raise its objection in its responses to the discovery requests" and is thus waived); *see* RCFC 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure."). The government does not argue that its failure should be excused.

Moreover, the government's formal response to RFPD No. 14 is improper. As the Federal Circuit explained, and as quoted above, a party may only respond to a document request by: (1) agreeing to produce documents as requested, (2) objecting, (3) moving for a protective order, or (4) "ignor[ing] the request" (not recommended). *Badalamenti*, 896 F.2d at 1362. The government chose none of these options and instead essentially informed Utility that the government would produce a universe of documents it deemed relevant. This is improper and any other grounds of objection have been waived. Accordingly, Plaintiff's motion is **GRANTED** with respect to RFPD No. 14.[5]

To the extent Utility's motion complains about the thoroughness or quality of the government's production from specific custodians or, more particularly, the manner or scope of electronic searches, these are issues that the parties should have discussed as part of the required early meeting of counsel pursuant to RCFC 26(f). Jay E. Grenig, *Electronic Discovery and Records and Information Management Guide*, § 11:6 ("Topics for the conference—Generally") ("The parties must determine precisely what the requesting party is actually seeking, what responsive documents or information the discovering party is reasonably capable of producing, and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention. Increasingly, courts expect parties to reach practical agreement on search terms, date ranges, key players, and the like."). With respect to search terms for electronically stored information ("ESI"), where "the parties cannot agree, the Court will decide." *Raine Grp. LLC v. Reign Cap., LLC*, 2022 WL 538336, at *3 (S.D.N.Y. Feb. 22, 2022). But that assumes that (1) the parties already have attempted to meet and confer in good faith pursuant to RCFC 26(f), and (2) the complaining party has provided to the Court sufficient context and detail to demonstrate why the producing party's searches are inadequate. *But see id.* at *1 (explaining that not only must "the producing party . . . search custodians and locations

---

[5] The Court further notes that it does not matter whether a current government employee is no longer working at the particular agency or agencies involved in this litigation; the government may still, in the legal sense, be deemed to have control over responsive documents. *DL v. D.C.*, 251 F.R.D. 38, 46 (D.D.C. 2008) ("Defendant District of Columbia has such control with respect to documents in the possession of its agencies other than DDOE. Accordingly, the District will be ordered to disclose any documents in its control, responsive to request 2 of Plaintiff's Second Document Request, regardless of which agency of the District may be in actual possession of such documents."). With regards to the term "control," it has been well established that the test for control is not defined as mere possession, but as the legal right to obtain such documents on demand. *Alexander v. FBI*, 194 F.R.D. 299, 304 (D.D.C. 2000) (citing *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *Tavoulareas v. Piro*, 93 F.R.D. 11, 20 (D.D.C. 1981) (both holding that under Rule 34(a), a party must produce those documents that he has a legal right to control or obtain)).

it identifies on its own as sources for relevant information as part of its obligations under Rules 26 and 34," but "[i]t should also cooperate with the requesting party to the extent the requesting party believes that other search terms, custodians or locations may have relevant information when fashioning an ESI protocol").

In this case, the Court infers that the parties have not agreed upon an ESI protocol. Certainly, Utility references no such protocol. Whether the parties ever attempted to agree on such a protocol (or tried but failed to do so), these issues should have been brought to the Court's attention long ago. While the Court has no intention of further delaying this case, perhaps Utility may yet crisply and clearly explain to the Court why, at this late date, it should order the government to perform yet additional searches or why the government's approach to ESI has been inadequate. As of now, however, Utility's motion suffers from a dearth of detail. For the Court merely to order the government to search for and produce "all relevant, nonprivileged, responsive documents," as Utility requests, Pl. MTC at 8, would do nothing more than parrot the discovery obligations the law already imposes on the government, and with which the government asserts it has complied.

Here is just one example of the defective nature of Utility's motion. Utility asserts that Ms. Peggy Knox, a United States Air Force engineer, located responsive documents from Mr. Ray Wogec, a government project manager, but that "as is clear from the Government's correspondence yesterday, Mr. Wogec's documents have not yet been produced." Pl. MTC at 7. In support of that assertion, Utility cites "APPX 230." *Id.* But that document is Ms. Knox's declaration. It says nothing about whether Mr. Wogec's documents have been produced by counsel for the United States. There is no citation to correspondence with the government. And this Court is not going to comb through a nearly 600-page appendix that lacks a table of contents to find what Utility intends to reference.[6]

---

[6] Here is another example: Utility asserts that a custodian's "declarations demonstrate that he did not conduct any searches" for two specific companies "or any of the names of Government personnel involved in the contracts at issue." Pl. MTC at 7. Utility provides zero explanation for why the putative omission warrants an order to compel further discovery responses; the Court is left to wonder why any of those omissions matter or why the search terms that were used would not be likely to uncover the entire universe of responsive documents. Utility further asserts that the custodian in question "limited his searches to one (1) repository without providing any assurance that the entire universe of relevant documents would lie within *those repositories.*" *Id.* (emphasis added). But Utility does not explain, *inter alia*, what it means by a "repository," why Utility has reason to believe there are other relevant files that have not been searched, and why the latter part of the sentence refers to "those repositories" – plural – after the first clause referred to just "one (1) repository."

Finally, Utility argues that the government improperly "repeatedly invoked a 'deliberative process' privilege" to withhold certain documents despite Utility's requests for production, Pl. MTC at 3.  On this issue, Utility's position is clearly meritorious while the government's conduct is very troubling to say the least.  The government explains that it withheld certain documents for "further review" and marked them on the log with the "deliberate process privilege" as "place-holder tags."  Def. Resp. at 4.  Accordingly, but only in response to Utility's motion, the government now indicates that it has "decided to release the documents coded 'deliberative process' upon the grounds that all documents are now subject to a protective order."  *Id.* (promising to "produce these few documents soon").  The government asserts that this issue is thus moot.  *Id.* at 22.

The government's assertion of mootness is baseless, as it depends on factual premises that turn out to be untrue.  Had the government already produced the documents, it may have had a point.  But as of Utility's reply brief, the government "has still not produced the documents[.]"  Pl. Repl. at 9.  During the hearing, the government conceded that this remains the case.  Accordingly, Utility's motion to compel with respect to documents withheld based on the deliberative process privilege is **GRANTED**.  The government shall produce those documents to Utility **on or before Friday, July 19, 2024**. If these documents necessitate Utility's reopening depositions that already have been completed, Utility may file a motion to do so (assuming the government does not acquiesce to Utility's request).

But that does not end the matter.  RCFC 37(a)(5) provides:

> If the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed— the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Accordingly, **on or before July 25, 2024**, the government shall file either: (1) a status report indicating it will meet and confer with Utility's counsel regarding the reasonable expenses to be paid to Utility for the portion of its motion (and other work) related to the withheld documents; or (2) a brief, not exceeding 10 pages (12 pt., Times New Roman font, double-spaced), explaining why the government should not have to pay such expenses.

There is also a far more egregious issue: counsel for the United States agreed during oral argument that government never had any basis for withholding the documents at issue.  RCFC 26 contains a certification provision and a sanction provision analogous to those of RCFC 11.  *See* RCFC 26(g)(1), (3).  The government must explain

11

why it should not be sanctioned for invoking the deliberative process privilege without basis as well as for its assertions in its response brief explaining the invocation of that privilege. RCFC 11. In that regard, the government explained as follows:

> When we asserted deliberative process privilege over a few documents, we did so as a convenience (because of existing coding options in our database) to create a placeholder to withhold documents needing further review. We explained this to Utility at the time when we produced documents on October 17, 2023.

Def. Resp. at 22 (citing A34-35, ECF No. 38-1 at 34-35).

But that is *not* what the letter to Utility's counsel explains at all. This is what the government, in its cover letter to the privilege log, told Utility:

> [D]ocuments marked "Deliberative Process" included some documents whose status was not clear to counsel. Counsel *will review the Deliberative Process designations again*, and counsel may release some of the documents now designated as Deliberative Process on the privilege log.

ECF No. 38-1 at 34-35 (emphasis added). This says nothing about "existing coding options." Rather, it references the document's "status" — clearly referring to whether a withheld document was covered by the deliberative process privilege. Indeed, this Court has a near-impossible time reading this explanation to Utility as anything other than an assertion that the government intended to revisit the deliberative process designations to confirm whether they were proper. To be clear, there is no mention of codes, third-party proprietary information, or any other potential privileges or bases for withholding the documents at issue. And, to make matters worse, counsel for the United States during oral argument all but admitted that the government never had any grounds to invoke the deliberative process privilege. *See United Affiliates Corp. v. United States*, 154 Fed. Cl. 335, 344 (2021) (discussing the "three procedural requirements" for the government to invoke the deliberative process privilege).

There are yet more troubling facts in play. That above-quoted cover letter to the privilege log is dated October 17, 2023. Utility's counsel pressed the government on the subject at least as early as March 19, 2024, ECF No. 35-1 at 570 (APPX570), and possibly much earlier, *see* Pl. MTC at 13. The Court further notes that in a June 12, 2024, email from counsel for the United States to Utility's counsel, the former indicates that he used the "'deli[b]erative process' privilege designations" because he "was not sure what [he] was looking at, and [was] worried about disclosing third party proprietary information or privileged information." *Id.* at 593 (APPX593). But as far as the Court can tell, that is

12

the first reference to putative concerns about third-party propriety information (nearly eight months after the October 17, 2023, letter).  Moreover, that explanation itself raises yet further questions.  To wit: not only has a protective order been in place since January 4, 2024, ECF No. 29, but it also remains to be seen whether those documents contain *any* indication that some privilege might apply.

So, what accounts for the shifting explanations for withholding these documents?  What is so special about these documents that Utility was forced to file a motion to compel in order to obtain them, notwithstanding that the government told Utility last year the government would "review" the privilege designations "again"?  What is the real reason for which the government has withheld these documents for so long and notwithstanding Utility's requests and protestations?  The Court wants, and is entitled to, answers.

Accordingly, on or before August 2, 2024, the government is hereby ordered to **SHOW CAUSE** for why it should not be sanctioned pursuant to:  (1) RCFC 26(g)(3) for withholding documents without any basis in law or fact; (2) RCFC 11  for the government's explanation for invoking the privilege — as represented to the Court in the government's response to Utility's motion to compel; or (3) 28 U.S.C. § 1927 for the totality of the government's conduct surrounding its invocation of the deliberative process privilege.[7]  The government shall file a response to this show cause order, not to exceed 20 pages (12 pt., Times New Roman font, double-spaced), **on or before August 2, 2024**.  Utility may file a response to the government's show cause filing **on or before August 9, 2024**.

If this deliberative process issue is a mess, it is entirely of the government's own making — and the Court requires an explanation for it.  None of this would have been necessary had the government produced the documents at issue in a timely fashion — at the latest in response to Utility's motion to compel and prior to the due date for the government's response to that motion.  The government's failure to do so strikes the Court as inexcusable and, frankly, a needless waste of Utility's and the Court's time.  (And if there is an innocuous explanation that can be reconciled with all the history recounted above, the Court will be delighted.)

---

[7] As this Court recognized in *Multiservice Joint Venture, LLC v. United States*:

> This Court's inherent authority to enter sanctions is embodied in [RCFC] 11 . . . (requiring a reasonable inquiry into statements alleged in papers filed), RCFC 16(f) (authorizing sanctions for violations of pretrial orders), RCFC 37 (authorizing sanctions for failure to cooperate during discovery), and 28 U.S.C. § 1927 (allowing the Court to impose costs upon any attorney who "multiplies the proceedings in any case unreasonably and vexatiously.").

85 Fed. Cl. 106, 112 (2008) (citing cases), *aff'd*, 374 F. App'x 963 (Fed. Cir. 2010).

\* \* \* \*

A final note to both parties regarding their conduct of discovery is warranted. This Court will not attempt to micromanage the discovery process. That is not the proper role of the Court, and certainly not something in which the Court will engage under the guise of a motion to compel. *See, e.g., Robledo v. Taylor*, 2016 WL 7385007, at \*3 (D. Ariz. Dec. 21, 2016) ("[T]he role of a federal court is not to micromanage all disputes between parties during discovery."); *King v. Sec'y of Health & Hum. Servs.*, 2008 WL 1994968, at \*2 (Fed. Cl. Feb. 7, 2008) (judge's role in discovery "is merely to *referee disputes* concerning whether the discovery requested is appropriate within the prescribed discovery rules and precedents"). That means the parties must do a better job of cooperating in completing discovery. At a minimum, that requires an actual meeting (whether in-person or virtual) to resolve any disputes prior to seeking this Court's intervention; an exchange of letters or email will not cut it. *Wilson v. Aargon Agency, Inc.*, 262 F.R.D. 561, 564 (D. Nev. 2010) ("When initiating an informal conference the parties must present to each other the merits of their respective positions with the same specificity with which they would brief the discovery dispute."). Of course, if either party presents to this Court a sharpened dispute that is clearly explicated, the Court will try to resolve it expeditiously. But vague, generalized, or conclusory complaints about what an opposing party has (or has not) done — without sufficient detail, context, and explanation of impact — or consisting of poorly crafted or defective syllogisms, will yield no helpful results.

## IV. Conclusion

For the foregoing reasons, the government's motion to compel is **DENIED.** Utility's motion to compel is **GRANTED IN PART** and **DENIED IN PART**. The parties shall comply with the Court's instructions *supra*. Furthermore, the parties shall cooperate in good faith and in a manner consistent with this Order. No extensions to the discovery schedule are likely to be granted absent extraordinary circumstances or unless a party demonstrates that it should be entitled to more time due to the other party's conduct.

**IT IS SO ORDERED**.

      s/Matthew H. Solomson
      Matthew H. Solomson
      Judge